## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MATTHEW MACORMIC, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VI-JON, INC., a Missouri Corporation,<br><br>Defendant. | **CASE NO.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Matthew Macormic on behalf of himself and others similarly situated, by through his undersigned counsel, hereby files this Class Action Complaint against Defendant Vi-Jon, Inc. and states as follows:

### NATURE OF THE ACTION

1.     Never has it been demonstrated more saliently that consumers rely on hand sanitizers to "kill germs" on their hands in order to protect themselves from infection.  And never has it been more important that manufacturers disseminate accurate and truthful information to the consuming public about the limitations of those products to "kill germs" or, more precisely, denature certain microbes that can cause infection.

2.     Defendant Vi-Jon, Inc. manufactures, advertises and labels numerous hand sanitizing products sold under store brand names, including under the equate brand name (the "Products").[1]

3.     Each of the Products state on the front-facing, primary display panel that it "KILLS

_____

[1] This action includes in the definition of Products all sizes, scents and variations of the Products that bear a "kills 99.99% of germs", "kills more than 99.99% of germs" and/or "kills 99.99% of harmful germs" representation on the primary display panel.

99.99% OF GERMS" (the "Representation").[2]

4.      "Germs" is a commonly understood term as an organism that causes disease.

5.      The Products, however, do not "kill" 99.99% of the organisms that cause disease.

6.      The Products are substantially ineffective against certain microbes, including certain non-enveloped viruses (for example, norovirus), protozoa (for example, the microbe that causes toxoplasmosis), and bacterial spores (for example, the organism that causes the gastric condition, C. difficile).

7.      The microbes, or "germs," for which the Products are ineffective comprise more than .01% of germs.  Accordingly, the uniform, material Representation that the Products kill 99.99% of germs is false and misleading, and Defendant omits material information concerning the limitations of the Products in making the Representation.

8.      The Products, for example, are generally ineffective at killing norovirus which, according to the Center for Disease Control ("CDC"), accounts for approximately 50% of all outbreaks of food-related illness in the United States.

9.      According to the CDC, each year on average in the United States, norovirus causes 19 to 21 million cases of vomiting and diarrhea illness, entailing 2,270,000 outpatient clinic visits (mostly in young children), 465,000 emergency room visits (mostly in young children), 109,000 hospitalizations, and 900 deaths (mostly in adults 65 and older).

10.      According to the CDC, hand washing with soap and water is more effective than hand sanitizer at removing certain kinds of germs, including norovirus.  In fact, the CDC's norovirus expert acknowledged that norovirus is resistant to many common disinfectants.  The CDC recommends using bleach to kill norovirus.

11.      The reason for this limitation is straightforward—norovirus has a structure known as a capsid—a protein shell—which alcohol cannot readily penetrate.  Because the active

---

[2] On information and belief, the Products state and stated on the primary display panel during the class period "KILLS 99.99% OF GERMS".

ingredient in each of the Products is ethyl alcohol, the Products are ineffective against norovirus.[3]

12.     Norovirus alone renders the Representation that the Products kill 99.99% of germs false and misleading.  Yet, it is not the only microbe for which the Products are ineffective.

13.     As described herein, the Products are also generally ineffective against numerous organisms that cause disease, including poliovirus, polyomavirus, hand foot and mouth disease virus, human papillomavirus ("HPV"), hepatitis A and cryptosporidium.

14.     Furthermore, each classification of virus or microbe has numerous different types or strains of "germs" that cause disease.  For example, there are approximately 25 different strains of norovirus that affect humans, and more than 100 different types of HPV.

15.     The U.S. Food and Drug Administration has deferred any rulemaking on whether the active ingredient in the Products, ethyl alcohol is generally recognized as safe or generally recognized as effective for use in consumer antiseptic rubs, because it determined that additional safety and effectiveness data is needed.

16.     Accordingly, the Products have a nonmonograph status, meaning there is no generally accepted FDA language for labeling and marketing the Products.[4]

17.     Despite their nonmonograph FDA status, the Products are misbranded under identical federal and Missouri laws.

18.     The facts below demonstrate that the Products' labeling is false and/or misleading, rendering the Products misbranded.  As a result of this misbranding, it is unlawful for any person to manufacture, sell, deliver, hold, offer for sale, or receive the Products in commerce.  *See* federal Food, Drug and Cosmetic Act §§ 331 *et seq*.; §§ 196.015, 196.100, RSMo.  As such, the Products are legally worthless.

19.     To be clear, Plaintiff does not bring this action pursuant to any FDA regulation, but under the applicable consumer protection laws and common law, which require that Defendant

---

[3] The Products contain 63% ethyl alcohol.

[4] A monograph is described by the FDA as "a kind of 'recipe book' covering acceptable ingredients, doses, formulations, and labeling in over-the-counter drugs.

truthfully and accurately label the Products.  Specifically, Plaintiff brings this action based on Defendant's false and misleading representation that the Products "kill" "99.99% of germs" and failure to disclose the limitations of the Products to denature certain microbes that cause disease.

20.     Plaintiff brings this action on behalf of himself and all others similarly situated to recover damages for Defendant's false, deceptive, misleading and unlawful conduct. Plaintiff seeks damages, reasonable attorneys' fees and costs, and disgorgement of all benefits Defendant has enjoyed from its unlawful and/or deceptive business practices, as detailed herein. Plaintiff makes these allegations based on his personal knowledge as to himself and his own acts and observations and, otherwise, on information and belief based on investigation of counsel.

## JURISDICTION AND VENUE

21.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

22.     This Court has personal jurisdiction over Defendant because Defendant is a Missouri corporation with its principal place of business in Missouri, Defendant's contacts with the forum are continuous and substantial, and Defendant intentionally availed itself of the markets within Missouri through the sale and distribution of the Products in Missouri and through the privilege of conducting business in Missouri.

23.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of Missouri and is a Missouri corporation with its principal place of business in Saint Louis, Missouri and because Plaintiff resides in this judicial district.

## PARTIES

24.     Plaintiff Matthew Macormic is a resident of Rolla, Missouri (Phelps County) who purchased the Products during the class period, as described herein.  Plaintiff's claim is typical of all Class members in this regard.  In addition, the advertising and labeling on the package of the

Products purchased by Plaintiff, including the Representation, is typical of the advertising, labeling and Representation of the Products purchased by members of the Class.

25.     Defendant Von-Jon, Inc. is a Missouri corporation with its principal place of business in Saint Louis, Missouri.  Defendant and its agents manufacture, market, distribute, label, promote, advertise and sell the Products.  At all times material hereto Defendant was conducting business in the United States and Missouri, including because Defendant is a Missouri corporation with its principal place of business in Missouri.

26.     Defendant and its agents promoted, marketed and sold the Products at issue in this jurisdiction and in this judicial district.  The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through labeling and advertising containing the misrepresentations and omissions alleged herein.

## FACTUAL ALLEGATIONS

### A.     Defendant Manufactures, Labels and Advertises the Products

27.     Defendant manufactures, labels, advertises, and sells the Products.

28.     The following images depict one of the Products purchased by Plaintiff:



29.     In addition to the Primary Display Panel Representation, Defendant states on the back-panel labels of the Products that they are "Effective at eliminating more than 99.99% of many common harmful germs & bacteria in as little as 15 seconds."

**B.     The Products Do Not Kill 99.99% of Germs**

30.     The Primary Display Panel Representation that the Products kill 99.99% of germs is false and misleading.

31.     "Germs" is defined by Merriam-Webster as, among other things, "*especially*: a microorganism causing disease".

32.     On information and belief, Defendant has not conducted efficacy studies, or scientifically valid and accurate studies, on *all* germs in order to substantiate its Representation that the Products kill 99.99% of germs.

33.     Furthermore, the Products do not "kill" certain germs, which comprise more than .01% of "germs" and more than .01% of "harmful germs."

34.     The active ingredient in the Products, ethyl alcohol, cannot readily denature certain microbes.

35.     The ineffectiveness of the Products against certain microbes is also compounded by the condition of the hands on which the microbes are found.  Alcohol based hand sanitizing rubs ("ABHS") may be ineffective where hands are dirty, grimy or greasy.

36.     In addition, the effectiveness of ABHS is reduced based on the Products' use directions, which require only a single application on the hands until dry.  This short exposure time is insufficient to inactivate certain microbes, particularly because ethyl alcohol evaporates quickly.

37.     The composition of certain non-enveloped viruses, protozoa and bacterial spores render the Products substantially ineffective, particularly under the proscribed manner of use.

38.     Examples of certain types of diseases caused by each of these types of microbes are described below.  These examples are included for illustrative purposes and to show that the Products are ineffective against more than 0.01% of "germs."  These examples are not, however, a comprehensive summary of all microorganisms against which the Products are ineffective.

ABHS has also been found to increase the number of bacterial infections in certain settings, such as enterococci infections.  In addition, one study found that ABHS is ineffective against the influenza a virus.

### *The Products are Ineffective Against Non-Enveloped Viruses*

39.     Non-enveloped viruses are composed of dense genetic material that is tightly packed with proteins and difficult to disrupt.  Examples of non-enveloped viruses include (i) norovirus, (ii) poliovirus, (iii) polyomavirus, (iv) hand foot and mouth disease virus, (v) human papillomavirus, and (vi) hepatitis a virus.

40.     *Norovirus*.  As stated above, norovirus causes substantial infection in the United States each year and is the most common food-borne illness.

41.     There are approximately 25 different strains of norovirus that affect humans.

42.     According to the CDC, hand washing is more effective than ABHS at "killing" norovirus.

43.     An article published by the Canadian Medical Association states that ABHS may actually *increase* the risk for outbreaks of norovirus.  Based on a survey of long-term care facilities in the United States, presented at an American College of Preventative Medicine meeting, facilities that experienced norovirus outbreaks were six times more likely to use hand sanitizers equally or more than soap and water for routine hand hygiene.  While the study also recognizes that the design of the survey precludes a causal link between hand sanitizer use and norovirus outbreak, it also cites to evidence that ABHS are "often ineffective against nonenveloped viruses, including norovirus."

44.     A study published by the American Society for Microbiology, Applied and Environmental Microbiology, found that ABHS "may be relatively ineffective against the [human norovirus], reinforcing the need to develop and evaluate new products against this important ground of viruses."

45.     A 2009 study from Applied Environmental Microbiology titled "Effectiveness of Liquid Soap and Hand Sanitizer Against Norwalk Virus on Contaminated Hands" concluded that

"alcohol-based hand sanitizer was relatively ineffective, reducing the genomic copies of NV cDNA by only 0.14 to 0.34 log(10) compared to baseline." The study found, "[d]espite the promise of alcohol-based sanitizers for the control of pathogen transmission, they may be relatively ineffective against the HuNoV, reinforcing the need to develop and evaluate new products against this important group of viruses."

46.     ***Poliovirus.***  There are three different types of poliovirus, types 1, 2 and 3, each of which have a slightly different capsid protein.

47.     Like norovirus, all three types of poliovirus contain a protein load that is not denatured by ethyl alcohol.

48.     In various studies, application of 70% ethanol to non-enveloped poliovirus—which is great than the concentration in the Products—had no effect on the virus, even after an extended period of time.  The Products contain at most 70% ethyl alcohol.

49.     ***Polyomavirus.***  Polyomavirus is a nonenveloped virus, which primarily causes severe infection in immune compromised individuals.  There are numerous types of polyomaviruses.

50.     ABHS at 80% ethanol has been found to be ineffective against polyomavirus.

51.     ***Hand Foot and Mouth Disease Virus ("HFMD")***.  HFMD is caused by the human enterovirus and primarily affects children, although it can also cause infection (sometimes serious) in adults.

52.     According to a study released by Thymos London, ABHS at 70% concentration of ethyl alcohol is largely ineffective against HFMD.  95% ethanol is the most effective concentration against HFMD but, even at that strength—which is far greater than the concentration found in the Products—alcohol still does not fully inactivate the virus.

53.     ***Human Papillomavirus ("HPV")***.  There are more than 100 varieties of HPV, some of which cause common warts on the hands and fingers.  HPV is transmitted primarily through skin-to-skin contact, including by contact with someone who is carrying the virus on their hands or fingers or by touching something that someone else touched who carried HPV on their

hands.  A study published by Science Daily states that individuals with current genital infections of HPV also have high levels of HPV DNA on their fingers.

54.    Numerous publications, including a study published in the Journal of Antimicrobial Chemotherapy, find that HPV is resistant to alcohol-based disinfectants.

55.    ***Hepatitis A***.  Hepatitis A is a contagious infection, which causes (among other things) fatigue, nausea and vomiting, joint pain, jaundice and liver damage.  Hepatitis A is commonly spread by close contact with an infected individual, through food or drink, and through shellfish harvested from contaminated water.  Hepatitis A outbreaks occur sporadically throughout the United States.

56.    According to numerous publications, including the Population Health Division of the San Francisco Department of Public Health, Disease Prevention & Control, ABHS does not kill the hepatitis A virus

### *The Products Are Ineffective Against Protozoa*

57.    ***Cryptosporidium***.  Cryptosporidium is a genus of protozoan pathogens, which include the giardia parasite and the parasite that causes toxoplasmosis.  There are at least 16 established cryptosporidium, at least eight of which have been reported in humans.

58.    The pathogen causing toxoplasmosis is commonly found in cat litter and undercooked food and is one of the most common parasitic infections in the world, which may be responsible for approximately 40 million infections in the United States.

59.    Cryptosporidium are responsible for gastrointestinal symptoms, including vomiting and diarrhea.  Cryptosporidiosis is the most common cause of recreational water illness outbreaks in the United States.  According to the CDC, outbreaks of cryptosporidium increased an average of 13% each year from 2009 to 2017.

60.    According to the CDC, "[a]lcohol-based hand sanitizers do not effectively kill cryptosporidium."  This is because cryptosporidium is protected by an outer shell that makes it very difficult to kill.  Cryptosporidium can, for example, survive for many days in chlorinated water in pools and on surfaces disinfected with chlorine bleach.

### *The Products Are Ineffective Against Spores*

61.     ***C. difficile***.  C. difficile is a major spore forming bacteria, which causes between 15-55% of all diarrheas.  C. difficile bacteria have complex layers of spore coats, which render ABHS ineffective.

62.     According to the CDC, within a month of diagnosis, 1 in 11 people over the age of 65 died of a healthcare associated C. difficile infection.

63.     In addition, according to a publication from the National Center for Biotechnology Information from the U.S. National Library of Medicine, C. difficile is associated with high morbidity and the cost of C. difficile infections is estimated at $5.4 billion in the United States.

64.     According to the CDC, washing with soap and water is the only way to prevent the spread of C. difficile from person to person.

### *Other Studies Showing the Products May be Ineffective*

65.     ***Enterococci***.  Enterococcal bacteria are responsible for infections that affect the digestive tract, bladder, heart and other parts of the body and globally make up ten percent of all bacterial infections acquired in a hospital setting.  There are at least 18 different species of enterococcal bacteria. In North American and Europe enterococci are a leading cause of sepsis, a fatal blood infection.

66.     A 2018 study published by Science Translational Medicine found that, as hand sanitizer use increased in hospital settings, the number of enterococcal infections also increased. One explanation for the increase is that enterococci are becoming increasingly tolerant of alcohol-based hand sanitizers.  Although, at the time of the study the bacteria were generally denatured by a 70% alcohol concentration, alcohol resistance is increasing over time.  Bacteria collected after 2009, for example, were ten times more resistant to alcohol than pre-2004 bacteria.  The study concludes that certain bacteria should be addressed with simple hand washing, rather than application of alcohol-based hand sanitizer.

67.     ***Influenza A.***  Although controversial, a 2019 study from researchers at the Kyoto Profectural University of Medicine found that ethanol-based hand sanitizers would have to be in

contact with the influenza A (flu) virus for at least four minutes before killing it.  "The reason ethanol-based disinfectants might not be as useful as previously thought has to do with the mucus that surrounds droplets of the influenza A virus. The mucus acts as a hydrogel and protects the virus from the ethanol, the investigators reported."  Furthermore, the researchers found that, unlike sanitizer, "[e]ven hand washing without soap is effective against influenza viruses. Of course, hand washing with soap is also effective, and further increases in disinfection effects are expected."

68.     Evaluated alone or collectively, the Products are ineffective against more than .01% of "germs" therefore the uniform Representation that they kill 99.99% of germs is false and misleading.

### C.     The Products Are Misbranded And Worthless Under the Law

69.     The Products are over-the-counter drugs.

70.     The FDA has been considering rulemaking concerning the category of "Topical Antimicrobial Drug Products: Consumer Antiseptic" for more than 45 years, since at least 1974. *See* 39FR33103.

71.     In April of 2019, the FDA issued a Final Rule wherein it deferred any regulatory action for consumer antiseptic rub products that contain three ingredients, including ethyl alcohol, which is the active ingredient in the Products.

72.     The FDA deferred making a monograph or nonmonograph finding for these products, meaning that there is no FDA approved "recipe book" for formulating and labeling the Products.

73.     The facts described herein, however, demonstrate that the Products are misbranded under the law.

74.     Identical federal and Missouri laws govern the labeling and misbranding of drugs. *See* § 196.100, RSMo ("Any manufacturer, packer, distributor or seller of drugs or devices in this state shall comply with the current federal labeling requirements contained in the Federal Food, Drug and Cosmetic Act, as amended, and any federal regulations promulgated thereunder.  Any

drug or device which contains labeling that is not in compliance with the provisions of this section shall be deemed misbranded.").

75.     A drug or device is misbranded "if its labeling is false or misleading in any particular." *See* 21 U.S.C. § 352.

76.     Misbranding reaches not only false claims, but also those claims that may be technically true, but are still misleading.  If any label representation is misleading, the entire product is misbranded and no other label statement can cure a misleading statement.

77.     Missouri law prohibits: "(1) The manufacture, sale, or delivery, holding or offering for sale of any food, drug, device, or cosmetic that is adulterated or misbranded; (2) The adulteration or misbranding of any food, drug, device, or cosmetic; (3) The receipt in commerce of any food, drug, device, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise; (4)  The sale, delivery for sale, holding for sale, or offering for sale of any article in violation of section 196.080 or 196.105; (5)  The dissemination of any false advertisement . . . ."  § 196.015, RSMo.

78.     Furthermore, Missouri law prohibits: "The using, on the labeling of any drug or in any advertising relating to such drug, of any representation or suggestion that an application with respect to such drug is effective under section 196.105, or that such drug complies with the provisions of such section . . . ."  § 196.015(11), RSMo.

79.     Section 196.105 governs the sale or delivery of a new drug and requires, among other things, that no person sell, deliver or offer for sale any new drug unless it has been approved under the federal act or "unless such drug has been tested and has not been found to be unsafe for use under the conditions prescribed, recommended, or suggested in the labeling thereof, and prior to selling or offering for sale such drug, there has been filed with the department an application setting forth full reports of investigations which have been made to show whether or not such drug is safe for use; a full list of the articles used as components of such drug; a full statement of the composition of such drug; a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and packing of such drug; such samples of such drug and

of the articles used as components thereof as the department may require; and specimens of the labeling proposed to be used for such drug."  § 196.105, RSMo.

80.     As described herein, contrary to the label Representation, the Products do not "kill 99.99% of germs" and are therefore misbranded under the law.

81.     Accordingly, the Products cannot be lawfully sold, held or received and are legally worthless.

82.     At the time of purchase, Plaintiff did not know, and had no reason to know, that Defendant's Products were misbranded under the law and not capable of being legally sold, delivered, held or received in commerce ("Legally Saleable").

83.     Plaintiff and reasonable consumers attach importance to whether goods such as the Products at issue are Legally Saleable.  Plaintiff and reasonable consumers would not have purchased the Products had they known they were not Legally Saleable.

84.     To be clear, Plaintiff brings this action pursuant to Missouri consumer protection law and the common law and does not assert any claim for violation of the FDCA or the Missouri Revised Statutes.  The FDCA and Missouri Statute, however, provide a predicate violation for Missouri's consumer protection laws and the common law and demonstrate that Plaintiff and Class members are entitled to a refund of the purchase price of the Products.

### D.     Plaintiff and Consumers Purchased the Products to Their Detriment

85.     Plaintiff and consumers purchased the Products to their detriment.

86.     Plaintiff purchased the branded Products one or more times during the class period, including on May 27, 2020.  Plaintiff purchased four "travel size" bottles (3 FL OZ per bottle) of the equate Product from a Walmart store located in Rolla, Missouri for approximately $0.97 per bottle.  Each of the purchased Products bear the Representation as described herein.  Plaintiff purchased the Products for personal and family use.  The price paid by Plaintiff was representative of the price paid by similarly situated consumers who purchased the Products.  In addition, the Representation on the Products purchased by Plaintiff was the same as the Representation purchased by members of the Class.

87.     In purchasing the Products, Plaintiff viewed Defendant's Representation.  Plaintiff purchased the Products with the reasonable belief that the Representation was true.

88.     Defendant knew or should have known that reasonable consumers would consider the Representation material in deciding to purchase the Products.   Accordingly, Defendant's Representation is false, misleading and reasonably likely to mislead reasonable consumers.

89.     At the time Plaintiff purchased the Products, Plaintiff did not know, and had no reason to know, that the Representation was false, misleading and deceptive.  Plaintiff would not have purchased the Products, or would have purchased them on different terms, if he had known the truth.

90.     Plaintiff suffered an ascertainable loss between the Products as represented by Defendant and as received.

91.     In addition, Defendant concealed or omitted material facts concerning the Products, including that they do not kill 99.99% of germs and are not Legally Saleable.

92.     Defendant knew or should have known that reasonable consumers would consider whether the Products were Legally Saleable material in deciding to purchase the Products.

93.     In purchasing the Products, Plaintiff and reasonable consumers reasonably believed that the Products were Legally Saleable.

94.     At the time Plaintiff purchased the Products, Plaintiff did not know, and had no reason to know, that the Products were not Legally Saleable.  Plaintiff would not have purchased the Products or would have purchased them on different terms if he had known the truth.

## CLASS DEFINITION AND CLASS ALLEGATIONS

95.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of himself, on behalf of all others similarly situated, and seeks to represent the following Class and Subclasses (collectively defined as the "Class"):

> All citizens of the United States who, within the relevant statute of limitations periods, purchased Defendant's Products ("Nationwide Class"); and

> All citizens of Missouri who, within the five years preceding the

14

filing of the Complaint, purchased Defendant's Products ("Missouri Subclass").

96.     Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has a controlling interest; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and their staff, and persons within the third degree of consanguinity to such judicial officer.

97.     Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

98.     This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

99.     **Numerosity**:  Members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Class consists of hundreds of thousands of purchasers throughout the State of Missouri and millions of purchasers throughout the United States.  Accordingly, it would be impracticable to join all members of the Class before the Court.

100.    **Common Questions Predominate:**  There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

- Whether the Product Representation and omissions are, or any single representation or omission is, false, misleading and/or deceptive;

- Whether Defendant violated the Missouri Merchandising Practices Act;

- Whether Defendant committed a breach of implied or express warranty;

- Whether the Products are misbranded and legally worthless;

- Whether Plaintiff and the Class have sustained damage as a result of

Defendant's unlawful conduct;

- The proper measure of damages sustained by Plaintiff and the Class; and

- Whether Defendant was unjustly enriched by its unlawful practices.

101.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent because Plaintiff, like the Class members, purchased Defendant's misbranded Products.   Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.   Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct.   Plaintiff's and Class member's claims arise from the same practices and course of conduct and are based on the same legal theories.

102.    **Adequacy:** Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent.  Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

103.    **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.      The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

b.      Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c.      Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members have no

substantial interest in individually controlling the prosecution of individual actions;

d.      When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.      This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendant.

104.    Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

105.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

106.    Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

### CAUSES OF ACTION
### FIRST CLAIM FOR RELIEF
**Violation of Missouri's Merchandising Practices Act**
**Misrepresentations and False Statements**
***(for the Missouri Subclass)***

107.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

108.    The MMPA "is designed to regulate the marketplace to the advantage of those

traditionally thought to have unequal bargaining power as well as those who may fall victim to unfair practices."  Huch v. Charter Commc'ns Inc., 290 S.W. 3d 721, 725 (Mo. banc. 2009). The MMPA provides that it is unlawful to "act, use or employ . . . deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ." § 407.020.1, RSMo.

109.    The MMPA applies to acts committed "before, during or after the sale, advertisement or solicitation" of merchandise, and provides a cause of action for "any person who purchases or leases merchandise primarily for personal, family or household purposes." Section 407.020 is intended to supplement the definitions of common law fraud to "preserve fundamental honesty, fair play and right dealings in public transactions."

110.    Defendant's conduct as described above constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce in that Defendant makes material false representations and omissions that the Products kill 99.99% of germs and are Legally Saleable.

111.    In violation of the MMPA, Defendant employed fraud, deception, false promise, misrepresentation and/or the knowing concealment, suppression or omission of material facts in its manufacture, sale and advertisement of the Products, including  concerning the limitations of the Products to "kill" certain "germs" and that the Products are not Legally Saleable.

112.    Plaintiff purchased the Products for personal, family, or household purposes.

113.    Plaintiff suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as

represented.  In addition, the Products are legally worthless.

114.    Plaintiff is also entitled to recover attorney fees as authorized by § 407.025.

**SECOND CLAIM FOR RELIEF**
**Violation of Missouri's Merchandising Practices Act**
**Unfair Practice, 15 CSR 60-8.020**
***(for the Missouri Subclass)***

115.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

116.    The MMPA prohibits as an unlawful practice the act, use or employment of any "unfair practice" in connection with the sale or advertisement of any merchandise in trade or commerce. § 407.020.1, RSMo.

117.    "Unfair practice" is defined as "any practice which –

(A) Either

        1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

        2. Is unethical, oppressive or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

15 CSR 60-8.020.

118.    Defendant's actions, as alleged herein, constitute an unfair practice.

119.    Plaintiff purchased the Products for personal, family, or household purposes.

120.    Plaintiff suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.

121.    In addition, Defendant's misrepresentations and omissions constitute an unfair practice because the Product labels are "false or misleading in any particular" and the Products are

19

therefore misbranded under the law.

122.    Because the Products are misbranded, they are not Legally Saleable.  Accordingly,

the Products are legally worthless.

123.    Plaintiff is also entitled to recover attorney fees as authorized by § 407.025.

**THIRD CLAIM FOR RELIEF**
**Violation of Missouri's Merchandising Practices Act**
**Concealment or Omission of any Material Fact, 15 CSR 60-9.110**
(*for the Missouri Subclass*)

124.    Plaintiff re-alleges and incorporates by reference the allegations contained in the

preceding paragraphs of this complaint, as though fully set forth herein.

125.    The MMPA prohibits as an unlawful practice the act, use or employment of the

"concealment, suppression or omission of any material fact" in connection with the sale or

advertisement of any merchandise in trade or commerce. §407.020.1, RSMo.

126.    A "material fact" is defined as "any fact which a reasonable consumer would

likely consider to be important in making a purchasing decision, or which would be likely to

induce a person to manifest his/her assent, or which the seller knows would be likely to induce a

particular consumer to manifest his/her assent, or which would be likely to induce a reasonable

consumer to act, respond or change his/her behavior in any substantial manner." 15 CSR 60-

9.010(1)(C).

127.    "Concealment of a material fact" is defined as "any method, act, use or practice

which operates to hide or keep material facts from consumers." 15 CSR 60-9.110(1).

128.    "Omission of a material fact" is defined as "any failure by a person to disclose

material facts known to him/her, or upon reasonable inquiry would be known to him/her."  15

CSR 60-9.110(3).

129.    Defendant's actions as alleged herein constitute the concealment and omission of

20

material facts.  Among other things, Defendant concealed and omitted the material facts that the Products do not kill 99.99% of germs and are not Legally Saleable.

130.    Plaintiff purchased the Products for personal, family, or household purposes.

131.    Plaintiff suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.  In addition, the Products are legally worthless.

132.    Plaintiff is also entitled to recover attorney fees as authorized by § 407.025.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
(***for the Nationwide Class and Missouri Subclass***)

133.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

134.    By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, as described herein.  This labeling and advertising constitutes express warranties and became part of the basis of the bargain between Plaintiff and members of the Class, and Defendant.

135.    Defendant, through its advertising and labeling, created express warranties that the Products comport with the label representation.  Specifically, Defendant created express warranties that the Products kill 99.99% of germs.

136.    The express warranties appear on all labels of the Products and specifically relate to the goods being sold.

137.    Despite Defendant's express warranties about the nature of the Products, the Products do not comport with the Representation.  Thus, the Products were and are not what Defendant represented them to be.

138.    Accordingly, Defendant breached express warranties about the Products and their qualities because the Products do not conform to Defendant's affirmations and promises.

139.     Plaintiff's counsel provided Defendant with pre-suit notice of the breach of warranty.

140.     Plaintiff and members of the Class purchased the Products.

141.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products.  Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
**Breach of Implied Warranty**
**(*for the Nationwide Class and Missouri Subclass*)**

142.     Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

143.     There was an implied warranty of merchantability that accompanied each retail sale of the Products and Defendant did not specifically disclaim such warranty.

144.     As described herein, Defendant impliedly warranted that the Products kill 99.99% of germs and that they are Legally Saleable.

145.     Defendant breached the warranty implied in the contract for the sale of the Products because the Products: (i) cannot pass without objection in the trade under the contract description; (ii) were not of fair average quality within the Product description; (iii) were not adequately labeled; (iv) were unfit for their intended and ordinary purpose; and (v) did not conform to the Representation on the Product label that they kill 99.99% of germs.  As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

146.     Plaintiff and Class members purchased the Products in reliance on Defendant's skill and judgment and the implied warranties.

147.     The Products were not altered by Plaintiff or Class members.

148.     As a direct and proximate cause of Defendant's breach of implied warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products.  Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

**SIXTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
***(for the Nationwide Class and Missouri Subclass)***

149.     Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

150.     By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

151.     Defendant had knowledge of such benefits.

152.     Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

153.     Defendant's acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent and misleading representations and omissions and unlawful conduct.

154.     Equity cannot in good conscience permit Defendant to be economically enriched for such actions at the expense of Plaintiff and members of the Class, and therefore restitution and/or disgorgement of such economic enrichment is required.

**PRAYER**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

A.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Class; and naming Plaintiff's attorneys as Class Counsel to represent the Class;

B.     For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

C.     For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Class for all causes of action;

D.     For an order awarding attorneys' fees and costs;

E.     For an order awarding punitive damages;

F.     For an order awarding pre-and post-judgment interest; and

G.     For such other and further relief as the Court deems just and proper.

DATED:  September 15, 2020          **STEELMAN & GAUNT**

By:  */s/* David L. Steelman

David L. Steelman, MO #27334
Stephen F. Gaunt, MO #33183
901 N. Pine Street, Ste. 110
P.O. Box 1257
Rolla, MO 65402
Tel: (573) 341-8336
Fax: (573) 341-8548
dsteelman@steelmanandgaunt.com
sgaunt@steelmanandgaunt.com

*Attorneys for Plaintiff and the putative Classes*